Robert J. JONES, Petitioner,

v.

CIVIL AERONAUTICS BOARD and Administrator of the Federal Aviation Agency, Respondents.

No. 17899.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 5, 1963.

Decided March 26, 1964.

Petition for Rehearing en Banc and Petition for Rehearing before the Division Denied June 10, 1964.

Mr. Robert J. Jones, pro se.

Messrs. John J. Keyser, Trial Atty., Federal Aviation Agency, and Frederic D. Houghteling, Atty., Civil Aeronautics Bd., with whom Asst. Atty. Gen., William H. Orrick, Jr., Messrs. John H. Wanner, Gen. Counsel, Civil Aeronautics Bd., Joseph B. Goldman, Deputy Gen. Counsel, Civil Aeronautics Bd., O. D. Ozment, Associate Gen. Counsel, Litigation and Legislation, Civil Aeronautics Bd., James D. Hill, Deputy Gen. Counsel, Federal Aviation Agency, and Lionel Kestenbaum, Atty., Dept. of Justice, were on the brief, for respondents.

Before FAHY, DANAHER and McGOW-AN, Circuit Judges.

PER CURIAM.

The Civil Aeronautics Board, affirming an order of the Administrator of the Federal Aviation Agency, revoked the airline transport pilot rating privileges of petitioner, thus depriving him of authority to serve as pilot-in-command of airline transport (large passenger-carrying commercial) aircraft, but not otherwise affecting his pilot status. The Board's order was based on findings made after hearings and procedures in which we find no error. The Board found that petitioner had violated two Civil Air Regulations, one providing that "no aircraft shall be flown into known or probable heavy icing conditions. * * *,"[1] the other providing that "no person shall operate an aircraft in a careless or reckless manner so as to endanger the life or property of others."[2]

On the flight which led to the revocation petitioner skilfully piloted to its destination a plane with 47 passengers aboard and safely landed it. Notwithstanding this, evidence amply supports the findings of the Board that in doing so he flew into known or probable heavy icing conditions which endangered life and property.

As to the second of the two grounds above referred to, the alternatives which confronted petitioner might also have

---

1. 14 C.F.R. § 42.54 (1963).

2. 14 C.F.R. § 60.12 (1963).

endangered life and property, due to the weather conditions which closed in on the plane during the flight, for which reason, were we the Board, we cannot say we would have revoked petitioner's transport pilot rating privileges.

█ But we must recognize the special competence and responsibility of the Board in administering the safety regulations referred to and we find no basis for judicial repudiation of the conclusion reached on the basis of Board findings which have substantial support in the evidence. The judgment the Board exercised is not, in sum, an unlawful one; nor was it reached in an unlawful manner.

Affirmed.

FAHY, Circuit Judge (dissenting).

Except for the matter now to be discussed I would join in the opinion and decision of the court.

After submission of this case for our decision Jones, petitioner, filed a motion to present newly acquired evidence. The gist of his motion is that within a week after we heard arguments respondents brought about petitioner's discharge by Eastern Airlines, by whom he had been employed, by advising Eastern of his appearance in court in an Eastern uniform, of the revocation of his airline transport rating four years before, by querying Eastern as to its policy of employing pilots who had pending against them charges of safety violations seeking revocation of their licenses and by also querying whether it had checked petitioner's competency and as to the action Eastern would take about the matter, thus applying pressure on Eastern to discharge petitioner.

Respondent Board filed a reply that no Board attorney "associated with this case, and, on information and belief, no other Board employee" had any contacts or discussions with Eastern about the matter. However, respondent Administrator moved to dismiss the pilot's motion as irrelevant and immaterial but then proceeded to go into the facts. He denied malice or evil intent, alleged by petitioner, and denied the exertion of pressure upon Eastern, or the making of threats. The Administrator then pointed out his responsibility under the statute to insure that the highest standards of care are maintained by air carriers, in fulfillment of which he has consistently pursued a policy of furnishing to the air carrier concerned information as to certificate and other types of enforcement actions taken against air carrier personnel; that he had no official knowledge petitioner was employed by Eastern until about the time of the argument in this court, when one of his attorneys was requested to determine if petitioner was employed by Eastern. This inquiry was made and resulted in ascertaining that petitioner was so employed, whereupon the attorney in accordance with the said long-standing policy of the Agency informed the representative of Eastern of the matters of record in this proceeding, only conveying information and not in any way seeking or intending to influence Eastern's actions with respect to petitioner.

An affidavit by one R. W. Rivenbark, Director of Flying for Eastern, is attached to the Administrator's response and motion to dismiss the motion of petitioner. The response itself takes the position that Eastern's discharge of petitioner was based on the fact that he misrepresented his background and prior record when he applied for employment by Eastern. The affidavit states that on or about December 10, which was shortly after the argument in this court, affiant was informed by one of Eastern's counsel that a Federal Aviation Agency attorney had made inquiries as to whether or not Eastern had a copilot by the name of Robert J. Jones, and affiant was informed that Jones had appeared before this court in an Eastern copilot's uniform in an action which involved the revocation of Jones' license. Affiant then says he understood the purpose of the inquiry to be merely to determine if Jones was an employee and would have had some right to wear the uniform, that he determined that Eastern had such an

employee, hired in April 1963, and since it was not Eastern's policy to hire a pilot when an agency action against his license was pending he checked the application form and found that the question "violations and/or license waivers" had been answered "none." He also learned that Jones had not disclosed in his pre-employment interview that an action was pending and affiant felt that he should have done so and had he done so Eastern would not have hired him. "In addition, I felt it was poor judgment for Jones to have appeared before the Circuit Court in an Eastern pilot's uniform." He then decided Jones should be discharged primarily on the grounds he had failed to divulge fully all the pertinent facts on his employment form and during his pre-employment interview. Jones elected to resign. The affiant concludes that the agency "did not attempt to nor did it influence my action in this matter in any way."

Jones has replied. He points out that while his case was on appeal to the Federal Aviation Agency and the Civil Aeronautics Board for approximately three years he flew as a captain with other companies as the holder of an airline transport rating, received approximately six competency checks from the Federal Aviation Agency while flying with those companies and neither the Administrator nor the agency made "such inquiries" to his employers; nor were such inquiries made when the Administrator issued petitioner an additional aircraft rating on his airline transport certificate in August 1962 while flying as a captain; that he was hired by Eastern in April 1963 not as a captain but as a copilot, which position requires far less qualifications than that of a captain; that the copilot ground schooling and the flight training that petitioner received from Eastern were monitored by the Agency in 1963 and no inquiry was made by the Administrator to Eastern concerning him; that he flew with Eastern as copilot for nine months without such inquiries and then after almost four years the Administrator took a sudden interest

in his "long-standing policy" immediately to contact petitioner's employer after oral argument before this court and not only informed Eastern of the certificate action pending against petitioner but about his appearance in court in his flight uniform. He denied that this action was taken in accordance with longstanding policy but instead was with malice and evil intent to impose further penalties upon him. He says in connection with the Rivenbark affidavit that Rivenbark and the other Eastern supervisor who handled the matter reviewed with petitioner his employment record with Eastern and disclosed it was above average, and also reviewed the case pending in court and the circumstances of why petitioner had appeared before the court in uniform, and that Eastern then decided to discharge petitioner primarily on the ground he had failed to divulge fully all pertinent facts on his employment application. He further states that at the time of employment with Eastern and until he has exhausted every means of appeal, he does not have a violation on his license and does not have a license waiver and, therefore, did not falsify his application for employment.

I point to one more factor. Counsel who argued the case for respondents in this court clearly advised the court with respect to a matter which bore directly upon the disciplinary action taken against petitioner; that is, we were advised that such action did not preclude employment of petitioner as a copilot but only as a pilot-in-command of transport planes. Notwithstanding this it appears to me that respondent Administrator has in all substance brought about petitioner's loss of employment as a copilot through pressure upon Eastern, the company which employed him in that capacity. This court had no objection to petitioner appearing in the uniform of Eastern during his personal argument of his own case, and he was entitled to be in that uniform if the representations to us above referred to were correct. I am unwilling to accept on the papers before us the conclusion that his discharge was

due merely to the manner in which he filled in the application form while his case was still pending. Even though he should have given a fuller answer, the whole course of events above outlined indicates that the cause of his loss of his copilot position was his appearance in court, in arguing his case, in the uniform he had a right to wear, and the resulting pressure exerted upon Eastern by personnel of the Government.

The petitioner has in fact received greater punishment than the Board and the Administrator represented was the consequence of the Board's order. His punishment has been increased by being deprived of a position as copilot, a position he was entitled to hold notwithstanding the order.

I would remand the case for reconsideration by respondents of what fairly should be done in view of petitioner's record as a whole, including his conduct as copilot during his recent employment by Eastern.